UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SEGUNDO NARVAEZ,                                          16-CV-01980 (GBD)(SN)

                                    Plaintiff,

            -against-

CITY OF NEW YORK, COMMISSIONER JOSEPH PONTE,
STEVEN WETTENSTEIN-WARDEN MANHATTAN
DETENTION CENTER, CLAYTON AUGUSTUS-WARDEN
BROOKLYN DETENTION CENTER, MONICA WINDLEY-
WARDEN NORTH INFIRMARY COMMAND, ANGELO
JAMIESON-WARDEN GDMC, ACHILLE ANTOINE, P.A.,
LYNN DEVIVO, P.A. RONY JOSEPH, P.A., BRENDA R.
HARRIS, M.D., DAVID VIERA, P.A., ROSEMARY NWANNE,
P.A., FRANTZ MEDARD, M.D., MYRIAM BLAIN, P.A.,
FRANCISCO PEGUERO, P.A., RONALD SCHLIFIMAN,
VITTORIO HARRIS , ANNE FRANCOIS, WARDEN JOHN
DOES, JOHN DOE DOCTORS, and JOHN DOE and JANE DOE
NURSES,

                                    Defendants.
------------------------------------------------------------------X


### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO DISMISS BY DEFENDANTS CITY OF NEW YORK, COMMISSIONER
### JOSEPH PONTE, STEVEN WETTENSTEIN-WARDEN MANHATTAN DETENTION
### CENTER, CLAYTON AUGUSTUS-WARDEN BROOKLYN DETENTION CENTER,
### MONICA WINDLEY- WARDEN NORTH INFIRMARY COMMAND, MIESON-
### WARDEN GDMC, ACHILLE ANTOINE, P.A., RONY JOSEPH, P.A., BRENDA R.
### HARRIS, M.D., DAVID VIERA, P.A., ROSEMARY NWANNE, P.A., FRANTZ
### MEDARD, M.D., MYRIAM BLAIN, P.A., FRANCISCO PEGUERO, P.A., VITTORIO
### HARRIS AND ANNE FRANCOIS


**OF COUNSEL:**

**Daryl Paxson, Esq.**

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

FACTUAL BACKGROUND ............................................................................. 3

STANDARD OF REVIEW .............................................................................. 8

ARGUMENT .................................................................................................... 9

    POINT I ..................................................................................................... 9

    THIS COURT SHOULD DISMISS THE COMPLAINT AGAINST
    THE COMMISSIONER AND WARDENS BECAUSE PLAINTIFF
    DOES NOT ALLEGE THAT THESE INDIVIDUALS WERE
    PERSONALLY INVOLVED IN ANY OF THE ALLEGED
    CONSTITUTIONAL VIOLATIONS ....................................................... 9

        A.  Inadequate Medical Care .......................................................... 9

        B.  Failure to train ....................................................................... 12

        C.  Failure to keep the jail clean ................................................. 13

    POINT II.................................................................................................. 13

    DISMISSAL OF THE COMPLAINT AGAINST THE
    INDIVIDUAL HEALTH CARE PROVIDERS IS WARRANTED
    BECAUSE THE HEALTHCARE PROVIDERS WERE NOT
    DELIBERATELY INDIFFERENT TO HIS MEDICAL NEEDS................... 13

        A.  The medical records and other documents refute Plaintiff's
        claim that he was provided with constitutionally inadequate
        medical care for tuberculosis ..................................................... 14

        B.  Plaintiff's claims regarding the denial of mental health care are
        not actionable ............................................................................. 18

    POINT III ............................................................................................... 20

    PLAINTIFF'S COMPLAINT, EVEN IF LIBERALLY CONSTRUED,
    DOES NOT PLAUSIBLY ALLEGE A CUSTOM OR POLICY OF
    THE CITY OF NEW YORK THAT CAUSED HIS INJURIES....................... 20

**POINT IV** ................................................................................................ 22

**THIS COURT SHOULD DISMISS PLAINTIFF'S ADA CLAIMS
BECAUSE PLAINTIFF DOES NOT ALLEGE HE WAS DENIED
ANY BENEFITS OR SERVICES BY REASON OF A DISABILITY** ........................... 22

**POINT V** ................................................................................................. 23

**PLAINTIFF'S VAGUE AND GENERAL ALLEGATIONS THAT THE
MOVING DEFENDANTS CONSPIRED TO VIOLATE HIS CIVIL RIGHTS
CANNOT SUPPORT A CLAIM UNDER 42 U.S.C. 1985** .................................. 23

**POINT VI** ................................................................................................ 24

**THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS** ................................ 24

**CONCLUSION** .......................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

Adams v. Orange Cnty of N.Y.,
  2014 U.S. Dist. LEXIS 165620, 2014 WL 6646042 (S.D.N.Y. Nov. 13, 2014)......................21

Adekoya v. Holder,
  751 F. Supp. 2d 688 (S.D.N.Y. 2010) ....................................................................13

Allah v. Goord,
  405 F. Supp. 2d 265 (S.D.N.Y. 2005) ....................................................................22

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)..............................................................................................10

Bd. of County Comm'rs v. Brown,
  520 U.S. 397 (1997)..............................................................................................20

Burke v. Pillai,
  2015 U.S. Dist. LEXIS 45722, 2015 WL 1565413 (D. Conn. Apr. 8, 2015)..........................19

Caiozzo v. Koreman,
  581 F.3d 63 (2d Cir. 2009) ....................................................................................9

Carnegie-Mellon University v. Cohill,
  484 U.S. 343 (1988)..............................................................................................24

Chambers v. Time Warner, Inc.,
  282 F.3d 147 (2d Cir. 2002) ..................................................................................9

Colon v. Coughlin,
  58 F.3d 865 (2d Cir. 1995) ....................................................................................10

Correa v. Hastings,
  2015 U.S. Dist. LEXIS 148346, 2015 WL 6681186 (S.D.N.Y. Sept. 16, 2015) ....................11

Cortes v. Johnson,
  114 F. Supp. 2d 182 (W.D.N.Y. 2000).............................................................18, 19

Davis v. McCready,
  2016 U.S. Dist. LEXIS 21166, 2016 WL 796847 (S.D.N.Y. Feb. 22, 2016)..........................22

DelaCruz v. City of New York,
  2015 U.S. Dist. LEXIS 65081, 2015 WL 2399346 (S.D.N.Y. May 19, 2015) ......................13

Dilworth v. Goldberg,
   914 F. Supp. 2d 433 (S.D.N.Y. 2012) ................................................... 13

Doe v. Whidden,
   557 F. App'x 71 (2d Cir. 2014) ......................................................... 10

El-Hanafi v. United States,
   2015 U.S. Dist. LEXIS 1266, 2015 WL 72804 (S.D.N.Y. Jan. 6, 2015) ............. 17

Estelle v. Gamble,
   429 U.S. 97, 102 (1976) ................................................................. 9

Franklin v. District of Columbia,
   163 F.3d 625 (D.C. Cir. 1998) ...................................................... 18, 19

Gyadu v. Hartford Ins. Co.,
   197 F.3d 590 (2d Cir. 1999) ............................................................ 23

Harrison v. Barkley,
   219 F.3d 132 (2d Cir. 2000) ......................................................... , 16

Hernandez v. Keane,
   341 F.3d 137 (2d Cir. 2003) ........................................................... 17

Hill v. Curcione,
   657 F.3d 116 (2d Cir. 2011) ............................................................ 9

Jackson v. N.Y.S. Dep't of Labor,
   709 F. Supp. 2d 218 (S.D.N.Y. 2010) .................................................. 8

Jacoby v. Cty. of Oneida,
   2009 U.S. Dist. LEXIS 83235, 2009 WL 2971537
   (N.D.N.Y. Sept. 11, 2009) ............................................................ 20

Leon v. Johnson,
   96 F. Supp. 2d 244, 250 (W.D.N.Y. 2000) ............................................. 19

Madera v. Ezekwe,
   2013 U.S. Dist. LEXIS 171948, 2013 WL 6231799 (E.D.N.Y. Dec. 2, 2013) ......... 16

Monell v. Dept. of Soc. Serv.,
   436 U.S. 658 (1978) .......................................................... 2, 20, 21, 22

Pembaur v. City of Cincinnati,
   475 U.S. 469 (1986) ................................................................... 21

Pitchell v. Callan,
   13 F.3d 545 (2d Cir. 1994) ............................................................ 24

iv

Redd v. Cnty. of Nassau,
2016 U.S. Dist. LEXIS 22089 (E.D.N.Y. Feb. 22, 2016)......................... 12

Roberts v. City of N.Y.,
2016 U.S. Dist. LEXIS 101750, 2016 WL 4146135 (S.D.N.Y. Aug. 2, 2016)....................... 11

Rosado v. Herard,
2014 U.S. Dist. LEXIS 40172, 2014 WL 1303513 (S.D.N.Y. Mar. 25, 2014) ....................... 22

Salahuddin v. Goord,
467 F.3d 263 (2d Cir. 2006) ....................................................................... 9

Santana v. Correct Care Solutions, LLC,
2014 U.S. Dist. LEXIS 62628, 2014 WL 1803308 (S.D.N.Y. May 6, 2014) ................. 15, 19

Sommer v. Dixon,
709 F.2d 173 (2d Cir. 1981) ................................................................. 24

Thomas v. City of New York,
2016 U.S. Dist. LEXIS 104850 (S.D.N.Y. Aug. 9, 2016)........................................ 20

Triano v. Town of Harrison,
895 F. Supp. 2d 526 (S.D.N.Y. 2012) ..................................................... 12

Triestman v. Fed. Bureau of Prisons,
470 F.3d 471 (2d Cir. 2006) ...................................................................... 8

Twombly v. Bell Atl. Corp.,
550 U.S. 544 (2007)................................................................................. 8

Walker v. Shaw,
2010 U.S. Dist. LEXIS 62664, 2010 WL 2541 711 (S.D.N.Y. June 23, 2010) ...................... 21

Warheit v. The City of New York,
2006 U.S. Dist. LEXIS 58167, 2006 WL 2381871 (S.D.N.Y. Aug. 15, 2006)....................... 20

Whitfield v. O'Connell,
402 F. App'x 563 (2d Cir. 2010) .......................................................... 17

Williams v. Fischer,
2011 U.S. Dist. LEXIS 23712, 2011 WL 1812527 (W.D.N.Y. Feb. 9, 2011) ........................ 11

**Statutes**

28 U.S.C. § 1367(a) ................................................................................. 24

28 U.S.C. § 1367(c)(3)............................................................................. 24

42 U.S.C. § 1985 ...................................................................... 1, 3, 23, 24

**Other Authorities**

Tabor's Cyclopedic Medical Dictionary (22th ed. 2005) ............................................................. 4

## INTRODUCTION

Defendants City of New York ("the City"), Commissioner Joseph Ponte, Warden Steven Wettenstein, Warden Clayton Augustus, Warden Monica Windley, Warden Angelo Jamieson, Achille Antoine, P.A., Rony Joseph, P.A., Brenda R. Harris, M.D., David Viera, P.A., Rosemary Nwanne, P.A., Frantz Medard, M.D., Myriam Blain, P.A., Francisco Peguero, P.A., Vittorio Harris, P.A., and Anne Francois (collectively "Moving Defendants"), submit this Memorandum of Law in support of their motion to dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(6).

Plaintiff, who is proceeding *pro se*, brings this action under 42 U.S.C. §1983, 42 U.S.C. §1985, and the Americans with Disabilities Act ("ADA"). He appears to allege that while incarcerated, he was mistakenly diagnosed with tuberculosis, housed with other inmates who tested positive for tuberculosis, and then contracted tuberculosis and Hepatitis A. According to the allegations in the Complaint, liability should be imposed against the Commissioner and wardens because they are required to "have their jails clean." Plaintiff claims the individual healthcare providers violated his civil rights because they administered tuberculosis medication when he did not have tuberculosis, did not administer tuberculosis medication after he tested positive for tuberculosis, and did not treat him for Hepatitis A. Finally, Plaintiff alleges he was wrongly denied mental health care because he was offered an interpreter to translate during his therapy sessions instead of being provided with a Spanish-speaking mental health clinician.

Plaintiff's claims cannot withstand dismissal. First, Plaintiff fails to plausibly allege that the Commissioner or wardens were personally involved in the purported civil rights violations or were deliberately indifferent to his medical needs. Instead, Plaintiff simply states

1

that "had they done their supervising work, I would not have been injured." This is precisely the type of claim that the Supreme Court has deemed to be insufficient.

Plaintiff's allegations concerning the tuberculosis treatment he received are directly contradicted by the medical records and other documents annexed to the Complaint. These records definitively show that Plaintiff was prescribed tuberculosis medication after he tested positive for tuberculosis and that the medications were not discontinued. Plaintiff thus fails to plausibly allege that the individual healthcare providers were deliberately indifferent to his medical needs. At most, Plaintiff's claims regarding the treatment he received for tuberculosis would constitute medical malpractice.

Furthermore, there is no basis for finding that Plaintiff's constitutional rights were violated because he was not provided with a Spanish-speaking clinician. Although inmates must be provided with an interpreter, they are not guaranteed a constitutional right to a Spanish-speaking clinician. In any event, Plaintiff's medical records document that it was the opinion of Plaintiff's mental health counselor that Plaintiff's English was very good and that she could render proper treatment in English. Plaintiff may disagree with the medical care he received, but such disagreement alone is insufficient to establish a claim for deliberate indifference.

If Plaintiff's allegations are construed to include a Section 1983 Monell claim against the City, Plaintiff does not sufficiently allege that a policy implemented by the City caused his injuries. As to the tuberculosis claims, the Complaint can be interpreted only as alleging that Plaintiff contracted tuberculosis because the City did not follow their policy of segregating inmates with tuberculosis from inmates without tuberculosis. This is the antithesis of a Monell claim. Moreover, any allegation related to the City's failure to provide a Spanish-

2

speaking mental health clinician is equally unavailing because, as stated above, inmates do not enjoy this constitutional right.

This Court should also dismiss Plaintiff's claims under the ADA and 42 U.S.C. §1985. Even assuming Plaintiff's mental health issues would qualify as a disability under the ADA, Plaintiff does not allege he was denied the benefits of any service because of his mental disability. Rather, he claims he was denied services because he spoke Spanish. Plaintiff's 42 U.S.C. §1985 cause of action is equally unavailing because Plaintiff offers only conclusory, vague and general allegations that the Moving Defendants conspired to deprive him of his civil rights.

Finally, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## **FACTUAL BACKGROUND**

Plaintiff filed his Complaint on March 14, 2016. In an Order dated July 26, 2016, this Court directed that all defendants file their responses to the Complaint by September 15, 2016 (Docket No. 29). The following facts are drawn from the Complaint and the medical records and other documents attached to the Complaint. A copy of the Complaint and exhibits are annexed to the Declaration of Daryl Paxson.[1]

Plaintiff entered the New York City Department of Correction on July 13, 2013. P.A. Antoine performed a skin test for tuberculosis which indicated that Plaintiff did not have tuberculosis. Exh. B at p. 4. On March 28, 2015, P.A. Harris performed a chest x-ray of

---

[1] The Complaint, with exhibits, was assigned four docket numbers, Docket numbers 1, 1-1, 1-2, and 1-3. Exhibit A includes the Complaint (pages numbered 1-21) and eleven pages of exhibits (pages numbered 22-33). The exhibits at Docket 1-1 are annexed as Exhibit B, the exhibits at Docket 1-2 are annexed as Exhibit C, and the exhibits at Docket 1-3 are annexed as Exhibit D.

Plaintiff. He recorded "[t]here is no evidence of tuberculosis." Under current medications, he wrote the word "None." Exh. C at p. 12.

Plaintiff alleges that at some point he had a false positive test for tuberculosis and was placed in housing with other tuberculosis-positive inmates. Exh. A at pp. 13-14. Plaintiff did not provide any evidence documenting this so-called false positive test or relate the date he received the false positive test result.

On May 4, 2015, Plaintiff had an annual physical. Exh. B at pp. 29-31. P.A. Blain, who performed the examination, ordered routine blood work. Exh. C. at p. 10. One of the tests, reported on May 7, 2015, revealed that Plaintiff's Quantiferon TB-Gold [a blood test for tuberculosis] was "Abnormal/Positive/Reactive." Exh. C at p. 3. Plaintiff confirmed in one of his grievance reports annexed to the Complaint that he was "found to be positive for TB. On 5/19/15, I was diagnosed with TB. I was placed on medication which will last for a year." Exh. A at p. 32.

P.A. Joseph saw Plaintiff on June 10, 2015. Exh. B. at pp. 21-23. The reason for the appointment was insomnia. P.A. Joseph recorded that Plaintiff complained of joint pain. P.A. Joseph noted that the joint pain might be secondary to the medication isoniazid, which Plaintiff had been prescribed after testing positive for tuberculosis.[2] P.A. Joseph wrote that Plaintiff's liver function was normal but "[w]e continue to follow up liver function." Exh. B at p. 21. P.A. Joseph prescribed Naprosyn for joint pain. Exh. B at p. 23.

On June 16, 2015, Dr. Medard had a telephone encounter with Plaintiff for medication renewal. The records indicate that Plaintiff previously had a positive QFT

---

[2] Isoniazid and pyridoxine are medications used to treat tuberculosis. See Tabor's Cyclopedic Medical Dictionary (22th ed. 2005). Because these tuberculosis medications can cause liver toxicity, patients must be monitored and given liver function tests. Exh. B at pp. 13-14.

(Quantiferon TB-Gold test). Dr. Medard renewed several medications, including a prescription for isoniazid, which was documented to have been first prescribed on May 21, 2015. Exh. B at p. 27.

Plaintiff also saw P.A. Blain on June 16, 2015. The medical records from that appointment are incomplete but indicate the reason for the visit was "aftercare letter request." Exh. B at p. 28. The partial medical records do reflect that P.A. Blain ordered liver profiles on May 21, 2015 and June 1, 2015. The results from those tests indicate that Plaintiff had no "significant changes compare to lab, monitor lft [liver function tests]." Exh. B at pp 33-35.

Plaintiff had a telephone encounter with P.A. Nwanne on June 18, 2015 for a medication renewal. Exh. B. at pp. 25-26. The medical records document that P.A. Nwanne prescribed Plaintiff ear drops for an infected ear. P.A. Nwanne did not provide any treatment for tuberculosis. The note mentions P.A. Viera but does not describe what actions were taken by P.A. Viera.

Dr. Harris had a telephone encounter with Plaintiff on June 30, 2015. The records document that Plaintiff previously had a positive QFT test. Dr. Harris renewed several prescriptions, including Plaintiff's prescription for isoniazid which began on May 21, 2015. Dr. Harris also started Plaintiff on pyridoxine. Exh. C at p. 8.

P.A. Peguero saw Plaintiff on June 30, 2015. The records are incomplete so the purpose of the appointment is unknown. P.A. Peguero wrote "Continue present care, consider stopping INH [isoniazid] if Hep positive or Lft's [liver function tests] 3X the normal." Exh. C at p. 9.

Plaintiff concedes he was administered tuberculosis medications, but contends that he immediately had an allergic reaction. According to the allegations in the Complaint,

Plaintiff was "exposed and subsequently infected with T.B., then refused medication due to Allergic reaction when I did not have it, while Defendants had other options to treat me with." Exh A at p. 14. The medical records document, however, that Plaintiff was administered isoniazid on May 21, 2015 and pyridoxine on June 30, 2015. Exh. B at p. 27, Exh. C at p. 8. There is no indication the tuberculosis medications were ever discontinued, that any clinician refused to administer medication, or that Plaintiff had an allergic reaction to the medications. In fact, in his Court of Claims Claim dated February 24, 2016 (nineteen days before he filed this lawsuit), Plaintiff confirms he tested positive for tuberculosis after being exposed to tuberculosis and that "Currently, I am taking medication and treatment." Exh. A at p. 25.

Plaintiff further alleges that he requested to be seen by mental health staff because he suffers from post traumatic syndrome disorder. Plaintiff asserts that he did not receive mental health treatment because he speaks Spanish only, and there were no Spanish speaking mental health professionals. Exh. A. at p. 15. Although Plaintiff admits he was offered a translator, he argues that this translator could not guarantee "confidentiality" or provide Plaintiff with "constitutionally acceptable therapy." Exh. A at p. 20.

The medical records document that mental health clinician Anne Francois had an appointment for mental health treatment with Plaintiff on May 5, 2015. Exh. C at pp 33, 35, Exh. D at pp. 1, 2, 4. Ms. Francois wrote in Plaintiff's chart:

> Patient was talking on the phone when clinician arrived to dorm area. He came to meet for session and states "I don't want to use the phone to speak . . it's not the same thing as speaking to a Spanish worker . . . I had Spanish therapist when I was in Brooklyn and GMDC . . . I speak English but I'm more comfortable talking about my feeling in Spanish." Exh. C at p. 33.

Ms. Francois conducted the session despite Plaintiff's protestations. She recorded in her notes that she informed Plaintiff there were no Spanish speaking clinicians in that building but "she would relay the message to clinical supervisor." Exh. C at p. 35.

On May 20, 2015, Ms. Francois had an appointment with Plaintiff but he refused treatment. She recorded:

> Pt is adamant about being reassigned to a Spanish speaking clinician despite being informed during his last session that they have none in this building. Clinician reiterated that they have no Spanish clinicians at this time. Pt was afforded translation services during all of his encounters. But he refused to meet in MH office the last two times stating that using a translator takes away from therapeutic process. This is his second encounter where he refused to utilize available resources. Pt is fairly fluent in English and able to express himself in a coherent manner. Exh. D at pp. 6-7.

Ms. Francois saw Plaintiff again on May 29, 2015. Exh. C at p. 34, Exh. D at pp. 3, 5, 11, 26. Ms. Francois noted:

> Patient came to gate of housing area to refuse session in MH office. He stated "I don't want to refuse mental health. I want to have someone that I can speak to in Spanish. I don't like the translation service because I felt that they didn't understand what I was saying to them or explain it correctly. I had two workers before who spoke to me in Spanish. I don't know why they don't have any in this building. Exh. D at p. 5.

Ms. Francois also wrote:

> Clinician reiterated that they have no Spanish clinicians in this facility but can provide him with a translator for sessions. Pt was educated that by law that he is in fact entitled to translation services and it has been offered. She expressed that his requirement to express himself in Spanish has been met. But they are not under any legal obligation to hire Spanish speaking clinicians for each facility. Pt continues to say that using a translator takes away from therapeutic process. His comment was validated and supportive therapy was provided. Pt was informed that his request has been documented in his chart and an email was sent to MH unit chief. This is his third encounter where he refuses to utilize available resources. Pt is fairly fluent in English and able to express himself in a coherent manner. Exh. D at p. 26.

Finally, Plaintiff claims he contracted Hepatitis A while in custody and that no medical treatment for this condition was provided. Exh. A at p. 16, Exh. B at p. 11. Plaintiff relayed in one of his grievance forms that on July 6, 2015, he was told that "they found antibodies of hepatitis A in my system. . . According to the Dr. Hepatitis A does not need any treatment or medications." Exh. B at p. 11.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a plaintiff must allege sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. See Twombly v. Bell Atl. Corp., 550 U.S. 544 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 556. "[A] plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. If the plaintiff has not "nudged [her] claim across the line from conceivable to plausible, [the] Complaint must be dismissed." Id. at 570.

In cases where, as here, the plaintiff is *pro se*, a court is obligated to interpret the claims as raising the strongest arguments that they suggest. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). The obligation to be lenient while reading a plaintiff's pleadings is particularly important in cases where the plaintiff alleges that his civil rights were violated. See Jackson v. N.Y.S. Dep't of Labor, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010). Nevertheless, "even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." Id.

8

Finally, on a 12(b) motion to dismiss, a court may consider documents attached to the complaint or documents incorporated within the complaint by reference. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

## ARGUMENT

### POINT I

**THIS COURT SHOULD DISMISS THE COMPLAINT AGAINST THE COMMISSIONER AND WARDENS BECAUSE PLAINTIFF DOES NOT ALLEGE THAT THESE INDIVIDUALS WERE PERSONALLY INVOLVED IN ANY OF THE ALLEGED CONSTITUTIONAL VIOLATIONS**

A.  **Inadequate Medical Care**

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 102 (1976).[3] To state a claim under §1983 for deprivation of medical care, a plaintiff must allege that a defendant undertook "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 104 (1976). Indeed, it is well accepted that "not every lapse in medical care is a constitutional wrong." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006).

The deliberate indifference standard includes both objective and subjective components. Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011). Under the objective prong, the alleged medical need must be "sufficiently serious." Salahuddin, 467 F.3d at 279. To fulfill the subjective component, a plaintiff must allege that the charged official acted with a "sufficiently

---

[3] It is unclear from the Complaint if Plaintiff was a pretrial detainee or a convicted inmate during the time at issue. If he was a pretrial detainee, his claims are analyzed under the Due Process Clause of the Fourteenth Amendment. If he was a convicted prisoner, his claims are analyzed under the Eighth Amendment. Regardless, the same "deliberate indifference" standard applies under both amendments. See Caiozzo v. Koreman, 581 F.3d 63, 70-71 (2d Cir. 2009).

culpable state of mind." Id. The mental state necessary to support a deliberate indifference

claim "requires that the charged official act or fail to act while actually aware of a substantial

risk that serious harm will result." Salahuddin, 467 F.3d at 280. This means the actor "must be

subjectively aware that his conduct creates such a risk." Id. at 281.

Furthermore, 42 U.S.C. §1983 does not allow for supervisory liability based upon

a *respondeat superior* theory. Rather, a plaintiff must show that "each Government-official

defendant, through the official's own individual actions, has violated the Constitution." Ashcroft

v. Iqbal, 556 U.S. 662, 676 (2009). Supervisory personnel, like the Commissioner and wardens,

may be considered "personally involved" only where:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation through
> a report or appeal, failed to remedy the wrong, (3) the defendant created a
> policy or custom under which unconstitutional practices occurred, or
> allowed the continuance of such a policy or custom, (4) the defendant was
> grossly negligent in supervising subordinates who committed the wrongful
> acts, or (5) the defendant exhibited deliberate indifference to the rights of
> inmates by failing to act on information indicating that unconstitutional
> acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). See Doe v. Whidden, 557 F. App'x 71, 72

n.1 (2d Cir. 2014)(declining to rule on Iqbal's effects on "the standards for establishing

supervisory liability as articulated in Colon v. Coughlin"). Plaintiff has not done so.

Instead, Plaintiff vaguely alleges that Joseph Ponte, Commissioner of the New

York City Department of Corrections was "aware of health issues and ignored them." Exh. A at

p. 10. He further claims that Wardens Wettenstein, Augustus, Windley and Jamieson denied me

care when I contracted tuberculosis, providing no alternative." Exh. A at p. 11. Finally, Plaintiff

alleges that "for hepatitis the above commissioners, wardens and medical staff provided no

medical care." Exh. A at p. 11. Plaintiff is clearly predicating his claims of liability in this case

on the Commissioner's and Wardens' positions in the Department of Correction during the relevant time period. Indeed, apart from his vague reference that Commissioner Ponte was "aware of health issues," Plaintiff has not alleged any facts showing that any of these defendants were personally involved in the alleged constitutional violation, either directly or in a supervisory role. Consequently, he cannot establish the requisite, tangible nexus between the defendants' conduct and the violations asserted.[4] See Correa v. Hastings, 2015 U.S. Dist. LEXIS 148346, 2015 WL 6681186, at *6 (S.D.N.Y. Sept. 16, 2015), report and recommendation adopted by 2015 U.S. Dist. LEXIS 148313, 2015 WL 6681186 (S.D.N.Y. Nov. 2, 2015)(medical indifference claim dismissed where plaintiff did not plead facts that showed the defendants' personal involvement in the alleged indifference); Williams v. Fischer, 2011 U.S. Dist. LEXIS 23712, 2011 WL 1812527 (W.D.N.Y. Feb. 9, 2011)(plaintiff's claims against the commissioner "are based upon his alleged failure to train DOCS employees and the fact that, according to Williams, the Franklin TB isolation unit fails to conform to applicable medical standards" and are "precisely the sort of allegations that were deemed insufficient by the Supreme Court").

        Furthermore, Plaintiff does not establish that Commissioner Ponte or Wardens Wettenstein, Augustus, Windley and Jamieson were deliberately indifferent to his medical needs. Even assuming Plaintiff adequately alleges the subjective component of the deliberate

---

[4] Although Plaintiff filed numerous grievances regarding his health issues, Plaintiff does not specifically allege that he forwarded any of these grievances to Wardens Wettenstein, Augustus, Windley or Jamieson. He does vaguely state that he "wrote the New York City Department of Corrections Commissioner about issues." Regardless, whether or not Plaintiff sent grievances to Commissioner Ponte or to the wardens is irrelevant. Courts have repeatedly held that the allegation that a supervisory official ignored a letter protesting unconstitutional conduct is not itself sufficient to allege the personal involvement of the official so as to create liability under §1983. See Roberts v. City of N.Y., 2016 U.S. Dist. LEXIS 101750, 2016 WL 4146135 at *7 (S.D.N.Y. Aug. 2, 2016)("Plaintiff's allegation that he forwarded a grievance to Warden Duffy, standing alone, is insufficient to establish his personal involvement").

indifference standard, he fails to assert the subjective prong. Indeed, except for his nebulous statement that the Commissioner was "aware of his health" issues, Plaintiff pleads no facts that establish that the Commissioner or wardens were aware that he was diagnosed and treated for tuberculosis or Hepatis A or that he was not provided with a Spanish-speaking mental health counselor. In the absence of such facts, there can be no plausible inference that Commissioner Ponte or Wardens Wettenstein, Augustus, Windley and Jamieson recklessly disregarded Plaintiff's serious medical needs. See Redd v. Cnty. of Nassau, 2016 U.S. Dist. LEXIS 22089 (E.D.N.Y. Feb. 22, 2016)("plaintiff's claim fails because he does not allege that defendant Armor acted with a culpable state of mind and with deliberate indifference to a serious medical need").

## B. <u>Failure to train</u>

Plaintiff also generally alleges that if the wardens had properly trained and supervised their staff, he would not have been injured. Exh. A at p. 9. This boilerplate claim is insufficient to plead a deliberate indifference claim under a failure-to-train or failure-to-supervise theory. Indeed, this conclusory statement is not supported by any factual allegations in the Complaint. Plaintiff does not, for example, describe the nature of the training or supervision that the wardens provided the staff who allegedly violated his rights, explain why that training or supervision was deficient, or provide any facts directly connecting the actions of the wardens' subordinates to a failure of training or supervision. See Triano v. Town of Harrison, 895 F. Supp. 2d 526, 539-40 (S.D.N.Y. 2012)(collecting cases and dismissing failure to train claim where plaintiff did "no more than make conclusory assertions" that the defendant failed to properly train its employees, without "providing any supporting factual detail about alleged deficiencies in the training program").

C.    **Failure to keep the jail clean**

      Finally, Plaintiff alleges that the wardens are liable because they are required to "have their jails clean." Exh. A at p. 9. This generalized statement is insufficient to impose liability against Wardens Wettenstein, Augustus, Windley or Jamieson.

      A claim based on conditions of confinement must also satisfy an objective and subjective requirement. Dilworth v. Goldberg, 914 F. Supp. 2d 433 (S.D.N.Y. 2012). Here, Plaintiff fails to plead facts sufficient to satisfy the subjective prong. He does not sufficiently allege that any official with knowledge of his condition disregarded an excessive risk to the plaintiff's health or safety. See Adekoya v. Holder, 751 F. Supp. 2d 688, 697 (S.D.N.Y. 2010)(finding subjective prong not satisfied by conclusory assertions that defendants were aware of plaintiff's medical needs and failed to provide him adequate care).

      Moreover, according to the allegations in the Complaint, Plaintiff did not contract tuberculosis because the jail was unsanitary. Rather, he alleges he contracted tuberculosis because he was mistakenly housed with tuberculosis-positive inmates. See DelaCruz v. City of New York, 2015 U.S. Dist. LEXIS 65081, 2015 WL 2399346, at *2 (S.D.N.Y. May 19, 2015)(dismissing claim where plaintiff failed to "indicate how the prison bedding has caused or exacerbated his claimed injuries").

### POINT II

**DISMISSAL OF THE COMPLAINT AGAINST THE INDIVIDUAL HEALTH CARE PROVIDERS IS WARRANTED BECAUSE THE HEALTHCARE PROVIDERS WERE NOT DELIBERATELY INDIFFERENT TO HIS MEDICAL NEEDS**

      This Court should dismiss the Complaint against the individual physicians and physicians' assistants because Plaintiff failed to establish that the individual healthcare providers were deliberately indifferent to his medical needs.

13

**A.** **The medical records and other documents refute Plaintiff's claim that he was provided with constitutionally inadequate medical care for tuberculosis.**

Plaintiff maintains that after receiving a false positive tuberculosis test result, he was placed with other tuberculosis-positive inmates and eventually contracted the disease. Plaintiff does not specify which health care provider obtained this incorrect result or provide any documentation reflecting the date of the "false positive" result. He also contends he was prescribed medications that made him sick and "denied blood test for liver damage screening due to T.B. medication." According to the allegations in the Complaint, P.A. Antoine examined his blood, determined that he was negative for tuberculosis, and recommended that he be put on tuberculosis medication, including isoniazid, robaxin, and pyridoxine. Exh. A. at p. 10. Plaintiff further asserts that P.A. Joseph, Dr. Harris, P.A. Viera, P.A. Nwanne, Dr. Medard, P.A. Blain, and P.A. Peguero administered tuberculosis medication when he did not need it and after he acquired tuberculosis, discontinued the medication and failed to provide alternative treatment for his condition. Exh. A at p.10. Finally, Plaintiff alleges that P.A. Harris determined through an x-ray that Plaintiff did not have tuberculosis yet recommended that Plaintiff be administered tuberculosis medication. Exh. A at p. 11.

At the outset, all claims against P.A. Viera, P.A. Antoine, P.A. Harris, P.A. Blain, and P.A. Nwanne should be dismissed. The medical records annexed to Plaintiff's Complaint establish that none of these providers treated Plaintiff for tuberculosis, recommended that Plaintiff take tuberculosis medication, prescribed tuberculosis medication, or discontinued tuberculosis medication.

P.A. Antoine and P.A. Harris saw Plaintiff before he was diagnosed with tuberculosis. The medical records generated at and after these visits specifically indicate that Plaintiff was not currently on any medications, or prescribed any medications, at the time of

those visits. P.A. Nwanne treated Plaintiff for an ear infection and P.A. Viera is mentioned once in the medical records, on the same day P.A. Nwanne treated Plaintiff for an ear infection. P.A. Blaine ordered the blood work that indicated that Plaintiff had contracted tuberculosis. Like P.A. Antoine and P.A. Harris, P.A. Blaine did not provide Plaintiff with any tuberculosis treatment or prescribe any medication. Consequently, because an individual defendant cannot be liable under §1983 absent personal involvement in the alleged deprivation of medical care, dismissal of the Complaint against P.A. Viera, P.A. Antoine, P.A. Harris, P.A. Blain, and P.A. Nwanne is warranted. See Santana v. Correct Care Solutions, LLC, 2014 U.S. Dist. LEXIS 62628, 2014 WL 1803308 (S.D.N.Y. May 6, 2014)(individual defendant not personally involved in the alleged deprivation of medical care where only evidence concerning defendant's actions shows she affirmatively aided plaintiff's treatment).

Plaintiff's claims against P.A. Joseph, Dr. Harris, Dr. Medard, and P.A. Peguero are similarly deficient. The medical records show that Plaintiff did not test positive for tuberculosis until May 7, 2015 and he was not administered any medication for tuberculosis until May 21, 2015, after Plaintiff's Quantiferon TB-Gold test came back positive. Plaintiff does not dispute that the May 2015 positive result was accurate or allege that this was the "false positive" he refers to in the Complaint. In fact, in documents annexed to the Complaint, Plaintiff acknowledged he was diagnosed with tuberculosis on May 19, 2015. Consequently, there is no merit to Plaintiff's claims that any of the named providers prescribed tuberculosis medication to Plaintiff before he was diagnosed with tuberculosis in May, 2015.

Plaintiff's allegation that he "was refused medication due to Allergic reaction" is also contradicted by Plaintiff's own exhibits. In his State Court Claim dated February 24, 2016 -- dated only nineteen days before he filed this lawsuit -- Plaintiff confirmed that he tested

positive for tuberculosis after being exposed to tuberculosis and that "Currently, I am taking medication and treatment." Exh. A at p. 25. Moreover, in one of his Personal Injury Claim Forms, Plaintiff explained that he was "found positive for TB. On 5/19/15 I was diagnosed with TB. I was placed on medication which will last for a year." Exh. A at p. 32.

Finally, Plaintiff's assertion that he was denied blood tests for liver damage screening due to tuberculosis medication is belied by the repeated references in the medical records to liver functions tests.

Given that the medical records directly refute Plaintiff's position that medication for tuberculosis was incorrectly prescribed and wrongfully withheld, Plaintiff fails to plausibly allege that P.A. Joseph, Dr. Harris, P.A. Viera, Dr. Medard, are P.A. Peguero deprived him of constitutionally adequate medical care.

In any event, even if the medical records did not directly contradict Plaintiff's claims, Plaintiff fails to sufficiently establish that the individual physicians were deliberately indifferent to his medical needs. "Deliberate indifference is a very high standard." Madera v. Ezekwe, 2013 U.S. Dist. LEXIS 171948, 2013 WL 6231799, at *11 (E.D.N.Y. Dec. 2, 2013). While significant delays in treatment can under certain circumstances, prompt an inference of deliberate indifference, "a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that the treatment is unreliable, or that the cure is as risky or painful or bad as the malady" is insufficient to rise to the level of deliberate indifference. Harrison v. Barkley, 219 F.3d 132, 139 (2d Cir. 2000)(citation omitted).

Here, Plaintiff has not satisfied the subjective prong of the deliberate indifference standard, because he does not allege that any of the individual physicians or physicians'

16

assistants acted or failed to act with a "sufficiently culpable state of mind" -- that is, culpable recklessness -- with respect to Plaintiff's diagnosis of tuberculosis or hepatitis. Even assuming Plaintiff satisfactorily pled that the healthcare providers were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, Plaintiff falls short of making a facially plausible showing that any of the named physicians or physicians' assistants either actually drew that inference or disregarded an excessive risk to Plaintiff's health.

Indeed, Plaintiff's insistence that the Defendants did not appropriately treat his tuberculosis or Hepatitis A, at best, states a claim for medical malpractice which is not actionable under §1983. As an example, Plaintiff claims he was "refused medication due to allergic reaction when I did not have it, while Defendants had other options to treat me with." Exh. A at p. 14. He further states in one of his grievance forms that "According to the Dr. Hepatitis A does not need any treatment or medications." Exh. B at p. 11. These admissions prove that Plaintiff is merely disagreeing with the medical treatment he received. See Whitfield v. O'Connell, 402 F. App'x 563, 565 (2d Cir. 2010)(summary order)("[D]isagreement with the type of medical care provided is insufficient to state a constitutional claim").

Finally, even if the individual healthcare providers could have done more to treat Plaintiff's conditions, i.e. experiment with different treatment methods, there would still be no constitutional violation. Rather, at most, this would support an inference of negligence. See Hernandez v. Keane, 341 F.3d 137, 141 (2d Cir. 2003)("evidence as to the treatment of plaintiff's hand suggests at most several acts of negligence over a prolonged period. That is not enough to support an Eighth Amendment violation"); El-Hanafi v. United States, 2015 U.S. Dist. LEXIS 1266, 2015 WL 72804 (S.D.N.Y. Jan. 6, 2015)(fact that defendant physician did not

follow up with plaintiff regarding the x-ray results did not satisfy subjective prong of deliberate indifference).

**B.      Plaintiff's claims regarding the denial of mental health care are not actionable.**

According to Plaintiff, he was denied constitutionally adequate mental health care because he was not provided with a Spanish-speaking mental health clinician. Plaintiff is wrong.

This issue was discussed in <u>Cortes v. Johnson</u>, 114 F. Supp. 2d 182 (W.D.N.Y. 2000). In that case, the Court considered whether the defendant violated plaintiff's right to privacy under §1983 by failing to provide medically qualified Spanish interpreters rather than inmate interpreters or non-medically qualified, non-inmate interpreters. The Court held that it did not. Noting that the Second Circuit had not yet addressed this issue, the Court referred to a similar case in the District of Columbia Circuit, <u>Franklin v. District of Columbia</u>, 163 F.3d 625 (D.C. Cir. 1998). In that action, the Court reversed the district court's decision holding that the Eighth Amendment compelled the District to provide interpreters whenever a Spanish-speaking inmate sought medical care. The Court noted:

> Suppose plaintiffs prevailed, suppose members of their class had a due process right to be treated by prison medical personnel who speak their native tongue. Such a constitutional right could hardly be reserved only for Spanish-speaking prisoners. Prisoners who spoke or understood only Arabic, or only Mandarin or Italian or any other of the world's languages would presumably have the same constitutional right when they sought medical treatment. Implementing such a system would inevitably entail considerable disruption and expense, and might well prove to be impossible given the difficulty the District has experienced in recruiting medical staff. Would prison officials have to hire bilingual doctors even if their translating skills could be used for only a handful of prisoners? When the mix of languages among the prisoner population changed from time to time, would the Constitution require adjustments in the prison's medical staffing? Would prison officials have to pass over more qualified physicians in the interest of hiring those who spoke several languages? Would bilingual medical staff have to be maintained around the clock? These and many other questions would draw the federal courts into the

18

day-to-day management of prisons in a way the Supreme Court and our court have strongly set ourselves against. Franklin, 163 F.3d at 638.

Here, as in Cortes and Franklin, it would be unduly burdensome if the Department of Correction was constitutionally obligated to provide a Spanish-speaking mental health counselor to every Spanish-speaking inmate. Moreover, no privacy rights are implicated here because Plaintiff does not suggest he was offered translators who were inmates. See Leon v. Johnson, 96 F. Supp. 2d 244, 250 (W.D.N.Y. 2000)(court assumed, without deciding, that under some circumstances the use of inmate translators can give rise to a violation of an inmate's right to privacy with respect to his medical condition).

In any event, the medical records document that Ms. Francois did in fact provide mental health services to Plaintiff on May 5, 2015 and on May 29, 2015. It was her opinion after these sessions that "Pt is fairly fluent in English and able to express himself in a coherent manner." Exh. D at 6-7. Plaintiff himself concedes he spoke English, but advised Ms. Francois that "I'm more comfortable talking about my feeling in Spanish." Exh. C at p. 33. Plaintiff may disagree with the medical care he received, but such disagreement alone is insufficient to establish a claim for deliberate indifference. See Burke v. Pillai, 2015 U.S. Dist. LEXIS 45722, 2015 WL 1565413, at *6 (D. Conn. Apr. 8, 2015)("[A]lthough the provision of medical care by prison officials is not discretionary, the type and amount of medical treatment is discretionary")(internal quotation marks omitted).

Finally, there is no indication that Ms. Francois evinced "a conscious disregard of a substantial risk of serious harm." In fact, the medical records establish that Ms. Francois attempted to assist Plaintiff with his request for a Spanish-speaking clinician by referring his complaints to her medical supervisor. See Santana v. Correct Care Solutions, LLC, 2014 U.S. Dist. LEXIS 62628, 2014 WL 1803308 (S.D.N.Y. May 6, 2014)(individual defendant not

19

personally involved in the alleged deprivation of medical care where only evidence concerning defendant's actions shows she affirmatively aided plaintiff's treatment). Moreover, Plaintiff does not allege that Ms. Francois had the means or the authority to do anything more to resolve his issue. Jacoby v. Cnty. of Oneida, 2009 U.S. Dist. LEXIS 83235, 2009 WL 2971537 (N.D.N.Y. Sept. 11, 2009)(dismissing deliberate indifference claim against a nurse who "lacked the authority to make medical decisions directly related to [the] [p]laintiff"). Under these circumstances, Plaintiff fails to plausibly allege that Ms. Francois was "culpably reckless."

## POINT III

### PLAINTIFF'S COMPLAINT, EVEN IF LIBERALLY CONSTRUED, DOES NOT PLAUSIBLY ALLEGE A CUSTOM OR POLICY OF THE CITY OF NEW YORK THAT CAUSED HIS INJURIES

Even if the Court liberally construes the Complaint to include a Section 1983 Monell claim against the City, Plaintiff fails to state a claim for municipal liability under any constitutional theory.

Under Monell v. Dept. of Soc. Serv., 436 U.S. 658, 694 (1978), a municipality may be held liable under §1983 only where a constitutional deprivation is inflicted pursuant to its policy or custom. To sustain a claim for relief under §1983 against a municipal defendant, "a plaintiff must show (1) the existence of an adopted policy or custom that caused injury and (2) a direct causal connection between that policy or custom and the deprivation of a constitutional right." Thomas v. City of New York, 2016 U.S. Dist. LEXIS 104850 (S.D.N.Y. Aug. 9, 2016). These "'rigorous standards of culpability and causation'" are applied by courts to "'ensure that a municipality is not 'held liable solely for the actions of its employee.'" Warheit v. The City of New York, 2006 U.S. Dist. LEXIS 58167, 2006 WL 2381871, at *12 (S.D.N.Y. Aug. 15, 2006) quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 405 (1997).

With respect to his claims regarding tuberculosis, Plaintiff's Complaint can be interpreted as alleging that the City failed to follow its policy of separating inmates with tuberculosis from inmates without tuberculosis. He argues that in one particular case, his own, the City made a mistake when they improperly housed him with other inmates who had tested positive for tuberculosis. Monell liability cannot be imposed on the City under this theory of liability. See Adams v. Orange Cnty of N.Y., 2014 U.S. Dist. LEXIS 165620, 2014 WL 6646042 (S.D.N.Y. Nov. 13, 2014)(plaintiff's claim that police officers conducting the search of his residence exceed normal pattern of search and seizure regulations "is the antithesis of Monell claim"); Walker v. Shaw, 2010 U.S. Dist. LEXIS 62664, 2010 WL 2541 711, at *7 (S.D.N.Y. June 23, 2010)(alleged failure to follow a policy "is the antithesis of a link between policy and action").

Furthermore, Plaintiff pleads no facts to show that his tuberculosis diagnosis resulting from improper housing was more than an isolated incident. A single incident alleged in a complaint can be sufficient to establish a municipal policy, but only if it is accomplished by a city official with final policymaking authority. Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Plaintiff does not allege he was mistakenly placed with tuberculosis-positive inmates by anyone with final policymaking authority. In fact, he does not clarify which healthcare provider made the supposedly incorrect diagnosis or which official placed him in inappropriate housing.

If Plaintiff's Complaint is interpreted as alleging that the City has a policy of failing to provide Spanish-speaking clinicians to Spanish-speaking inmates, that claim too should fail. As detailed in Point II, there is no authority holding that inmates have a constitutional right to a Spanish-speaking clinician as opposed to an interpreter. Where there is no underlying

constitutional violation, there can be no <u>Monell</u> liability. <u>See</u> <u>Davis v. McCready</u>, 2016 U.S. Dist. LEXIS 21166, 2016 WL 796847 (S.D.N.Y. Feb. 22, 2016)(<u>Monell</u> claim dismissed where plaintiff failed to adequately plead an underlying constitutional violation).

**POINT IV**

**THIS COURT SHOULD DISMISS PLAINTIFF'S ADA CLAIMS
BECAUSE PLAINTIFF DOES NOT ALLEGE HE WAS DENIED
ANY BENEFITS OR SERVICES BY REASON OF A DISABILITY**

"[T]o state a claim under the ADA, a prisoner must establish that: (1) he or she is a qualified individual with a disability; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity that provides the service, program, or activity is a public entity." <u>Allah v. Goord</u>, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005)(citations omitted).

Plaintiff alleges that the Moving Defendants violated the ADA because his "mental issue" is a disability, and because inmates who spoke English were given medical care and not exposed to diseases while Spanish-speaking inmates were not. Exh. A at p. 21. Even assuming that Plaintiff's "mental issue" constitutes a disability within the meaning of the ADA, Plaintiff fails to state a claim under the ADA. Plaintiff does not allege he was excluded from participation in any program or activity, or otherwise treated differently, because of that disability. Rather, Plaintiff asserts he was treated differently because of his ethnicity, which is not an actionable claim under the ADA. <u>See</u> <u>Rosado v. Herard</u>, 2014 U.S. Dist. LEXIS 40172, 2014 WL 1303513, at *4 (S.D.N.Y. Mar. 25, 2014)(plaintiff did not plead facts demonstrating he was denied access to therapeutic group sessions because of a disability; instead, he pled facts demonstrating he was denied access to therapeutic group sessions because of his ethnicity.

"Because neither the ADA nor the Rehabilitation Act addresses discrimination based on ethnicity, Rosado's claims under these statutes must be dismissed").

## POINT V

**PLAINTIFF'S VAGUE AND GENERAL ALLEGATIONS THAT THE MOVING DEFENDANTS CONSPIRED TO VIOLATE HIS CIVIL RIGHTS CANNOT SUPPORT A CLAIM UNDER 42 U.S.C. 1985**

Although Plaintiff has not specified the subsection under which his civil rights conspiracy claim is asserted, a fair reading of 42 U.S.C. §1985 suggests that Plaintiff's claim must be based on §1985(3) which proscribes a conspiracy to deprive a person of any rights or privileges under the laws. The four elements of a §1985(3) claim include (a) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. The conspiracy must also be motivated by some racial or otherwise class-based, invidious discriminatory animus behind the conspirators' action.

Complaints containing only conclusory, vague or general allegations that the defendants have conspired to deprive a plaintiff of his civil rights are insufficient.[5] See Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999) citing Sommer v. Dixon, 709 F.2d 173, 175

---

[5] In the first section of the *pro se* Complaint form used by Plaintiff, he lists claims for retaliation, denial of due process, and denial of equal protection of the law. Exh. A at 5. These causes of action, however, are only barely mentioned in the body of the Complaint. As to retaliation, Plaintiff claims he was denied health care because he complained about being denied health care. This does not constitute an adverse action. As to denial of due process, Plaintiff does not specify the process he is referring to. Finally, as to denial of equal protection, Plaintiff states no facts to support his claim that he was treated differently from other Spanish-speaking inmates seeking mental health care or other tuberculosis-positive inmates. Accordingly, these claims, to the extent they are alleged, should also be dismissed.

(2d Cir. 1981). Here, Plaintiff fails to point to any evidence establishing the existence of any conspiracy. Rather, he simply asserts that "because defendants conspired to violate my civil rights, they are also liable under 42 U.S.C. § 1985." Exh. A at p. 20.

## POINT VI

**THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS**

Under 28 U.S.C. § 1367(a), in any action in which a federal district court has original jurisdiction, "the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Supplemental jurisdiction may be declined over a state claim if "the district court has dismissed all claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994)("it is axiomatic that a court should decline to exercise jurisdiction over state-law claims when it dismisses the federal claims prior to trial") citing Carnegie-Mellon University v. Cohill, 484 U.S. 343 (1988).

For the reasons stated above, Plaintiff's federal claims against the Moving Defendants must be dismissed for failure to state a cause of action under 42 U.S.C. §1983, 42 U.S.C. §1985, and the ADA. If the Court dismisses the federal claims, it would be well within the Court's power to decline supplemental jurisdiction over any state law claims, including claims for medical malpractice, negligence, or infliction of motional distress which the Complaint may be construed to allege.

24

## CONCLUSION

For the reasons set forth above, this Court should grant the Moving Defendants' motion to dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(6), together with such further relief as this Court deems just and proper.

Dated: White Plains, New York
September 14, 2016

Yours, etc.,

HEIDELL, PITTONI, MURPHY & BACH, LLP

By: _____

DARYL PAXSON (1836)
*Attorneys for Defendants*
The City of New York, Commissioner
Joseph Ponte, Warden Steven Wettenstein,
Warden Clayton Augustus, Warden Monica
Windley, Warden Angelo Jamieson,
Achille Antoine, P.A., Rony Joseph, P.A.,
Brenda R. Harris, M.D., David Viera, P.A.,
Rosemary Nwanne, P.A., Frantz Medard,
M.D., Myriam Blain, P.A., Francisco
Peguero, P.A., Vittorio Harris, P.A., and
Anne Francois
81 Main Street
White Plains, New York 10016
Tel: (914) 559-3100
Fax: (914) 949-1160
*dpaxson@hpmb.com*

*Via UPS Overnight Mail*

TO:    Segundo Narvaez
15-A-3658
Coxsackie Correctional Facility
72 Lock Lane 11, P.O. Box 999
Coxsackie, New York 10254

25